1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ERIC GONZALES MIRANDA,                   No.  2:17-CV-1653-DMC

12              Plaintiff,

13         v.                                  MEMORANDUM OPINION AND ORDER

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                Defendant.
16

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19    review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20    Pursuant to the written consent of all parties (Docs. 6 and 9), this case is before the undersigned

21    as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).

22    Pending before the court are the parties' briefs on the merits (Docs. 16, 25, and 27).

23              The court reviews the Commissioner's final decision to determine whether it is:

24    (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

25    whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

26    more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

27    (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

28    a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

                                          1

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

Step 1   Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2   If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3   If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

/ / /

2

|     |          |                                                                                      |
|-----|----------|--------------------------------------------------------------------------------------|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on September 20, 2013, and on May 1, 2014. See CAR 187.[1] In the application, plaintiff claims disability began on November 6, 2012. See id. In his opening brief, plaintiff claims disability based on the following:

> Plaintiff's impairments included disc bulges at all levels of his lumbar spine, most severe at L5-S1 where the bulge was broad-based with a prominent left foraminal narrowing (Tr. 863). His other physical impairments included cervical strain, chronic pain, left shoulder strain, superimposed with myofascial pain syndrome, left knee patellofemoral syndrome with associated left quadriceps atrophy, right shoulder strain possibly superimposed with acromioclavicular degeneration, and diabetes mellitus II. His mental impairments included a Severe, Recurrent Major Depressive Disorder and Panic Disorder with Agoraphobia.

Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 4, 2016, before Administrative Law Judge (ALJ) L. Kalei Fong. In a May 25, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): myofascial pain syndrome, cervical and lumbar strain(s), bilateral shoulder strain(s), and degenerative joint disease of the left knee;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work, except the claimant us unable to climb ladders, ropes, or scaffolds; the claimant is able to frequently climb ramps or stairs; he is able to frequently balance, stoop, kneel, crouch, or crawl; the claimant must avoid all exposure to work hazards; he is capable of simple repetitive tasks with limited public contact;

4. Considering the claimant's age, education, work experience, residual functional capacity and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 189-200.

///

///

---

[1]     Citations are the to the Certified Administrative Record (CAR) lodged on January 16, 2018 (Doc. 11).

The Appeals Council granted review and, on September 9, 2016, issued an order remanding the matter back to the ALJ for further proceedings. See CAR 207-209. The Appeals Council identified the following issues: (1) while the ALJ concluded plaintiff has severe bilateral shoulder strain(s) and degenerative joint disease of the left knee, the ALJ's residual functional capacity assessment did not include corresponding limitations or address plaintiff's need for a cane; and (2) though the ALJ stated a vocational expert appeared at the hearing, the ALJ does not discuss any vocational expert testimony in the hearing decision. See id.

A second administrative hearing was held before the same ALJ on February 1, 2017. In a March 6, 2017, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the cervical and lumbar spine(s), degenerative disc disease of the left knee, depression, and panic disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: medium work, except the claimant is unable to climb ladders, ropes, or scaffolds; the claimant is able to frequently climb ramps or stairs; he is able to frequently balance, stoop, kneel, crouch, or crawl; the claimant must avoid all exposure to work hazards; he is capable of simple repetitive tasks with limited public contact; he is capable of interacting with supervisors and co-workers;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing his past relevant work as a machine packager.

See id. at 18-30.

After the Appeals Council declined further review on June 6, 2017, this appeal followed.[2]

/ / /

/ / /

/ / /

---

[2] The court notes the Appeals Council did not grant review of the ALJ's second decision even though the ALJ concluded plaintiff has a greater capacity for work, including the ability to perform his past relevant work, than found in the first decision.

# III.  DISCUSSION

In his opening brief, plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinions;[3] and (2) the ALJ failed to provide sufficient reasons for rejecting his testimony and statements as not credible.

## A.  Medical Opinions

### 1.  The ALJ's Analysis

At Step 4, the ALJ engaged in a detailed assessment of the medical opinion evidence.  See CAR 26-29.  Specifically, the ALJ considered opinions rendered by:  (1) plaintiff's treating chiropractor; (2) plaintiff's treating physician, Dr. Yung; (3) agency examining physician, Dr. Salvador-Moses; (4) agency examining physician, Dr. Pon; (5) state agency consultative reviewing physicians; (6) plaintiff's treating physician, Dr. Belsky; and (7) testifying medical expert, Dr. Schmitter.  See id.  The ALJ relied on the "physical assessments of Dr. Yung and State agency, the mental assessments of State agency, and the record as a whole."  Id. at 29.

Regarding the treating sources (plaintiff's chiropractor and Drs. Yung and Belsky), the ALJ stated:

> In August 2013, a treating chiropractor rendered a functional assessment, wherein he found the claimant was unable to work through September 2013 (Ex. 16F).  The chiropractor later affirmed this assessment for periods through December 2013 (Ex. 24F).  These assessments are given little weight.  First, the chiropractor is not considered an acceptable medical source per SSR [Social Security Ruling] 06-03p.  Furthermore, the assessments were only temporary, referring to short periods.  As such, the assessments do not meet temporal requirements for disability.
>
> In November 2012, treating physician, J. Yung, M.D., indicated the claimant was capable of full-time work with the following limitations:  the claimant is able to lift a maximum of 10 pounds.  The claimant requires a 5-minute break for every hour of work (Ex. 2F).  Dr. Yung continued to recommend these restrictions, pending medical improvement (Ex. 2F).  These assessments are given some weight to the extent they show the claimant has been capable of modified light work.  This finding is consistent with activities of daily living, treatment reports, mild objective

---

[3]  In Section VI.A. of his opening brief, plaintiff argues the ALJ failed to provide legally adequate reasons for rejecting the opinions of Dr. Salvador-Moses, the only examining doctor's opinion of record concerning plaintiff's mental limitations.  In Section VI.B. of his brief, plaintiff contends the ALJ's residual functional capacity finding is flawed because ALJ improperly rejected every other medical opinion of record in favor of the ALJ's own analysis of the medical evidence.

findings, and the record as a whole. On the other hand, Dr. Yung rendered these assessments as temporary limitations, intended to assist the claimant while he obtained medical care and reached maximum medical improvement (in light of workers' compensation injury). As such, they do not represent the claimant's overall condition during the period at issue. Updated reports show the claimant retained significant muscle strength in the upper extremities and was capable of lifting more than 10 pounds. As such, Dr. Jung's [sic] limitations for lifting/carrying is given little weight as to the entire period of time.

* * *

In or around March 2015, treating physician, G. Belsky, D.O., rendered a physical assessment, wherein he reported the following temporary restrictions: the claimant is able to lift 3-4 pounds overhead and 10 pounds to his waist (emphasis in original). The claimant is unable to sit, stand or walk more than 4-6 hours. He is able to sit, stand or walk for over 4-6 hours in combination. The claimant is unable to bend, squat or climb. The claimant is unable to work around hazards or outside year-round. It is noted that Dr. Belsky failed to identify the limitations are lasting 12 months or longer (Ex. 9F). This assessment is given little weight as Dr. Belsky, himself, recognized that the limitations were temporary in nature, and not intended to exceed a period of 12 months or longer. As such, they fail to meet temporal requirements for severe impairments/limitations.

In January 2017, treating physician, Dr. Belsky, rendered an updated assessment, wherein he opined as follows: the claimant is unable to lift more than 10 pounds. The claimant is able to sit for 2-5 minutes at one time for a total of 2 hours in an 8-hour workday. The claimant is able to stand or walk for 15 minutes for a total of 30 minutes in an 8-hour workday. The claimant must lie down for the remainder of the day due to pain. Dr. Belsky indicated the limitations were applicable from November 2014 through current (Ex. 23F). This assessment is given little weight. First, they are extreme and extend beyond the claimant's own representation of abilities. For example, the claimant testified he is able to sit for 30 minutes at one time, whereas Dr. Belsky reported a limit of 2-5 minutes (Hearing Testimony, 5/4/2016). The claimant indicated he is also capable of activities of daily living, including living alone, shopping in stores, and attending church (Ex. 5E and Hearing Testimony, 5/4/2016). One questions how the claimant would be capable of such activities if he was as limited as determined by the doctor. The fact that Dr. Belsky's limitations are more extreme than the claimant's own accounts casts doubt on their veracity. Furthermore, Dr. Belsky's assessment is inconsistent with treatment recommendations. As indicated above, the claimant has only received conservative care with pain medication. One would expect aggressive medical care if the claimant were as limited as determined by the doctor. Additionally, his assessment contrasts updated treatment reports. Again, these reports indicate the claimant's back condition is "stable" with medication (Ex. 14F and 18F). One would expect the claimant's pain to be out of control, given the extreme limitations in Dr. Belsky's opinion. Lastly, the assessment was severely criticized by the medical expert (see below), wherein he reported that Dr. Belsky's opinion, like the claimant's complaints, was out of proportion with the modest

/ / /

treatment record and minimal findings. The medical expert described this opinion as "erroneous" and exaggerated (Hearing Testimony, 2/1/2017).

CAR 26, 28-29.

Regarding the agency examining sources (Drs. Salvador-Moses and Pon), the ALJ stated:

In December 2013, examining physician, Dr. Salvador-Moses rendered a mental assessment, wherein she opined as follows: the claimant has moderate impairment in the ability to perform simple tasks. The claimant has severe impairment in the ability to attend to usual work situations. He has moderate impairment in concentration and severe impairment in persistence or pace. He has severe impairment in the ability to interact with supervisors, co-workers and public (Ex. 6F). This assessment is given little weight. First, Dr. Salvador-Moses appears to base her opinion largely on the claimant's subjective complaints, which have been inconsistent during the period at issue (as detailed in full above). For example, the claimant indicated to Dr. Salvador-Moses that his social functioning was "severely limited." He indicated he avoids others and does not want to interact with people (Ex. 6F, page 2). In apparent reliance on these statements, Dr. Salvador-Moses found the claimant has severe impairments in the ability to interact with supervisors, co-workers and public. However, other evidence of record shows the claimant has regular interactions with family and friends. In fact, the claimant outright admits he has never had difficulty with interacting with others during employment, and stated he chose to live with this close friend (Ex. 5E). The fact that Dr. Salvador-Moses appears to rely so heavily on the claimant's subjective complaints, when evidence exists to contradict these allegations casts doubt on the medical opinion. Secondly, the doctor's medical opinion is inconsistent with the lack of mental health care during the period at issue. It is (again) emphasized that the claimant never sought or received specialized health care in the 4 years since the alleged onset date. It is true the claimant recently began psychotropic medication (as prescribed by his treating physician); however, this treatment is undercut by the fact that he showed immediate improvement in the months following his medication (Ex. 14F, page 18). Lastly, in tendering her assessment, Dr. Salvador-Moses was unable to consider evidence the claimant did not provide maximum effort during numerous examinations (related to claims for secondary gain). Such evidence could have led Dr. Salvador-Moses to more closely scrutinize the claimant's subjective accounts of limitations.

In December 2013, examining physician, Dr. Pon, rendered a physical assessment, wherein he found as follows: the claimant [is] capable of lifting/carrying 10 pounds. The claimant is able to stand or walk for 4 hours and sit for 6 hours in an 8-hour workday. The claimant's use of a cane while standing/walking and performing postural activities is beneficial by history. The claimant is limited to occasional climbing, crawling, stooping, crouching, kneeling and squatting. The claimant is limited to frequent pushing, pulling and operation of foot controls. The claimant is limited to occasional reaching (Ex. 7F). This assessment is given little weight. First, Dr. Pon admits he based several limitations on

the claimant's representation that he requires a cane for ambulation. He indicated the claimant would require a cane during standing/walking and postural activities. He also stated, "use of a cane will put limitations on his (the claimant's) lifting and carrying." At the same time, Dr. Pon admits he was unable to evaluate the claimant's gait pattern due to the claimant's refusal to ambulate without his cane. Dr. Pon indicated that his consideration of the claimant's use of a cane was "by history" only. Of course, the claimant later admitted to treating physician (and in hearing testimony), that he is capable of walking without a cane and does so regularly (when indoors). Therefore, many of Dr. Pon's limitations (rendered with consideration to use of a cane) would be unnecessary. The fact that Dr. Pon was unable to fully consider the claimant's objective capabilities casts doubt on his limitations. Furthermore, his medical opinions contrast with accounts of daily activities, the conservative course of medical care and the mild findings on objective testing. If the claimant were limited to sedentary work, one would expect more aggressive medical care and more substantial findings on x-rays, MRIs, etc.

CAR 26-27.

Regarding the agency reviewing sources, the ALJ stated:

In January 2014, State agency rendered a physical assessment, wherein they found the claimant capable of light work with the following limitations: the claimant is unable to climb ladders, ropes or scaffolds. The claimant is able to frequently climb ramps or stairs. He is able to frequently balance, stoop, kneel, crouch, or crawl. The claimant must avoid all exposure to work hazards. He is capable of simple repetitive tasks with limited public contact (Ex. 1A). Thereafter, State agency corroborated their assessment (Ex. 3A and 4A). These assessments are given some weight, as they are largely consistent with the above residual functional capacity. These elements are supported by accounts of daily activities and treatment reports. However, at the recent hearing, a medical expert found the claimant capable of medium work (as opposed to light). This finding considers updated evidence and clinical observations. It is more consistent with the record as a whole. Therefore, State agency is not afforded full weight in this decision.

In January 2014, State agency rendered a mental assessment, wherein they found the claimant has mild restriction in activities of daily living, moderate limitation in social functioning and moderate limitation in concentration, persistence or pace with no episodes of decompensation. As to functional assessment, State agency opined the claimant is capable of simple repetitive tasks with limited public contact (Ex. 1A). Thereafter, State agency corroborated their assessment (Ex. 3A and 4A). These assessments are given great weight as they show the claimant is at least capable of the above mental residual functional capacity. This finding is supported by accounts of daily activities, which include the performance of unskilled (and semi-skilled) tasks. They are consistent with the lack of specialized mental health care, the assessments of treating physicians that the claimant's condition improved with only a short period of psychotropic medication and the record as a whole.

CAR 27-28.

Finally, the ALJ discussed hearing testimony provided by the medical expert:

> At the hearing, medical expert, E Schmitter, M.D., rendered a functional assessment, wherein he opined the claimant is capable of medium work with occasional postural limitations (Hearing Testimony, 2/1/2017). This assessment is given great weight. As a medical expert, Dr. Schmitter considered all evidence of record, and based his objective opinion on updated treatment reports and an overall picture of the claimant's condition. His opinion is consistent with accounts of daily activities, inclusive of living alone, completing light household chores and shopping for groceries. It is consistent with the conservative course of medical care, the mild findings on objective testing and the record as a whole.

CAR 29.

### 2.    Plaintiff's Contentions

Plaintiff argues the ALJ rejected Dr. Salvador-Moses' opinions ". . .for reasons that should not survive judicial scrutiny." According to plaintiff:

> Dr. Salvador-Moses opined Plaintiff's pace and persistence was severely impaired, as were his abilities to deal with changes in a routine work environment, attend to usual work situations and interact appropriately with supervisors, co-workers, peers and the public (Tr. 671). She also opined Plaintiff was unable to manage his own funds (Tr. 671).
> The ALJ essentially gave three reasons for rejecting Dr. Salvador-Moses' opinion, i.e., 1) her opinion is based on Plaintiff's subjective complaints; 2) Plaintiff did not seek or obtain psychiatric care; and 3) Plaintiff showed immediate improvement after he began taking psychotropic medications (Tr. 26-27). Each of these reasons is legally inadequate.

Regarding reliance on plaintiff's subjective complaints, plaintiff contends: "This reason must fail because there is no indication in Dr. Salvador-Moses' report that she relied on Plaintiff's subjective complaints more heavily than on her clinical observations (Tr. 669-71)." Plaintiff asserts the ALJ failed to account for Dr. Salvador-Moses' objective findings showing "significant deficits" on mental status examination. As to lack of psychiatric care, plaintiff argues this reason is invalid pursuant to Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (questioning the practice of chastising one with a mental disorder for the exercise of poor judgment in seeking mental health care). Finally, plaintiff asserts the ALJ's finding plaintiff experiences improvement with medication is not supported by the record.

/ / /

/ / /

Plaintiff also challenges the ALJ's evaluation of the medical opinions in the context of his contention the ALJ's residual functional capacity finding is not based on substantial evidence because the ALJ substituted her interpretation of the objective findings for the doctors' interpretations. According to plaintiff:

> The ALJ's finding that Plaintiff retained the functional capacity to perform medium work is not supported by any medical opinion of record. Instead, the ALJ's RFC finding is based on his lay interpretation of the evidence, which does not constitute substantial evidence. See Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999) (ALJ's determination not based on substantial evidence because it was not based on a medical opinion, but on the ALJ's "own views").
>
> None of the physicians who examined or treated Plaintiff opined he could perform the exertional requirements of medium work, which requires lifting and carrying 50 pounds occasionally and 25 pounds frequently and requires standing or walking most of the time. 20 C.F.R. §§ 404.1567(c), 416.967(c); Social Security Ruling (SSR) 83-10.
>
> * * *
>
> Even Dr. Schmitter, the testifying physician whose opinion the ALJ gave "great weight," opined Plaintiff could perform far less than medium work found by the ALJ. Specifically, Dr. Schmitter opined Plaintiff could perform the lifting requirements of medium work, but was limited to standing/walking for four to six hours a day and occasional stooping, bending, crawling and creeping (Tr. 111).
>
> Thus, the ALJ's RFC finding is based not on a medical opinion, but on the ALJ's lay interpretation of the evidence. The evidence subjected to the ALJ's lay interpretation includes an MRI of Plaintiff's lumbar spine that revealed significant positive findings, i.e., disc bulges at all levels, worse at L5-S1 where the bulge was a broad-based disc protrusion and there was spondylosis, a slightly deformed ventral aspect of the S1 nerve sleeve, facet joint degenerative changes, and a prominent left foraminal narrowing with possible impingement upon the exiting left L5 nerve sleeve (Tr. 863). The ALJ simply was not qualified to interpret this raw medical data and translate it into functional terms. See Dines v. Berryhill, No. ED CV 16-2629-E (C.D. Cal. September 27, 2017) (unpublished) (ALJ relied on his own lay review and interpretation of MRIs and medical rest results, which was error because without expert medical assistance, the ALJ could not competently translate the medical evidence into a physical residual functional capacity assessment) (citing Tackett v. Apfel, 180 F.3d 1094,1102-03 (9th Cir. 1999); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996); and Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)).

/ / /

/ / /

/ / /

/ / /

11

Finally, also in the context of his argument regarding the ALJ's residual functional capacity finding, plaintiff asserts as to Drs. Warbritton, Yung, Pon, Belsky, and Schmitter the ALJ ". . .either gave reasons for rejecting medical source opinions that are not specific and legitimate, or gave no reasons at all for rejecting the portions of medical source opinions he did not accept."[4]  Specifically, plaintiff contends:

> Dr. Yung's opinions. The ALJ rejected the opinions of Dr. Yung, who treated Plaintiff in 2012 and 2013, because these were temporary assessments and "updated reports" show Plaintiff retained "significant muscle strength in the upper extremities and was capable of lifting more than 10 pounds" (as opined by Dr. Yung) (Tr. 26, 599, 601, 603, 622, 628). These reasons will fail the specific and legitimate standard of review because Dr. Yung's "temporary" assessment that Plaintiff could lift no more than 10 pounds, first expressed in 2012, is consistent with the subsequent medical source opinions ("updated reports") of Dr. Pon and Dr. Warbritton, expressed in 2013, and the opinions of Dr. Belsky, expressed in 2015 and 2016 (Tr. 652). Thus, Dr. Yung's assessment turned out to be permanent. Because the ALJ misconstrued the medical opinion evidence, his reasons for rejecting the opinions of Dr. Yung are not specific and legitimately supported by substantial evidence.
>
> Dr. Warbritton's opinion. Although the ALJ acknowledged Dr. Warbritton's 2013 assessment, the ALJ gave no reasons for rejecting Dr. Warbritton's opinion that Plaintiff should push/pull no more than 10 pounds, could not walk on uneven ground nor do more than repetitive bending or squatting (50% or less per day) (Tr. 22-23, 649). This is obvious error.
>
> Dr. Pon's opinion. The ALJ rejected the opinion of Dr. Pon, the consultative examining physician, that Plaintiff could lift no more than 10 pounds, stand/walk 4 hours with a cane, and was limited to occasional reaching, as well as occasional postural activities when using a cane (Tr. 27, 666-67). The ALJ's primary reason for this rejection is "Dr. Pon admits he based several limitations on claimant's representation that he requires a cane for ambulation" (Tr. 27). This is error because Dr. Pon did not indicate in his report that he doubted Plaintiff's need to use a cane or that he thought Plaintiff was exaggerating his symptoms (Tr. 673-76). On the contrary, as summarized in the Statement of Facts, Dr. Pons's positive clinical findings were many and included limited ranges of motion in Plaintiff's spine, shoulders and left knee, and muscle strength in his left knee was significantly reduced (Tr. 675-76). He also observed Plaintiff needed to hold onto a table for support and needed the support of a cane to stand (Tr. 675). The ALJ mentions none of these clinical findings when rejecting Dr. Pon's opinion (Tr. 27). Instead, the ALJ focused on Plaintiff's use of a cane (Tr. 27). Plaintiff cane had been prescribed in November 2013 by Dr. Potter, his chiropractor, who opined Plaintiff was not ambulatory without a cane and had no stability (Tr. 73-74, 798-99)
> The ALJ's finding that Plaintiff "later admitted" he was "capable of

---

[4]      While the ALJ discussed Dr. Warbritton's September 2013 report in the context of summarizing the medical evidence, the ALJ did not note any opinions regarding plaintiff's functional limitations from this source.  See CAR 22-23.

12

walking without a cane and does so regularly (when indoors)" is based on a possible misapprehension of the evidence (Tr. 27). If Plaintiff had admitted he did not regularly use a cane indoors, this might imply he could work indoors. However, this is not what Plaintiff said. Instead, he told Dr. Belsky he did not use his cane in his house and, at his hearing, he testified he always used his cane outside and used it in the house when he felt unbalanced (Tr. 74-75, 768). Ambulating without a cane in the comfort and familiarity of Plaintiff's own home is categorically different than trying to ambulate without a cane in a competitive workplace, indoors or out. The ALJ also rejected Dr. Pon's opinion based on a general statement that it "contrasts with accounts of daily activities, the conservative course of treatment and medical care and the mild findings on objective testing" (Tr. 27). These reasons will fail the specific and legitimate standard of review, which requires an ALJ to set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation and make findings. See Reddick, 157 F.3d at 725.

Dr. Belsky's opinions. Dr. Belsky offered two opinions, one in February 2015 and another in January 2017 (Tr. 682, 869). The ALJ rejected Dr. Belsky's February 2015 opinion because these were "temporary" limitations (Tr. 28). However, Dr. Belsky indicated that Plaintiff would be so limited until around January 2016 (Tr. 683), then in January 2017, Dr. Belsky indicated Plaintiff was similarly limited, e.g., he could lift no more than 10 pounds (Tr. 682, 869). The ALJ cites no evidence that Plaintiff's impairments appreciably improved between February 2015 and January 2017. Therefore, the limitations Dr. Belsky expressed in 2015 were not "temporary." Therefore, Dr. Belsky's opinions corroborated each other as well as the opinions of Dr. Yung (2012-2013) and Dr. Pon (2013) that Plaintiff could lift only 10 pounds (Tr. 622, 676).

The ALJ gave several reasons for rejecting Dr. Belsky's January 2017 opinion, each of which fails the specific and legitimate standard of review.

The ALJ found Dr. Belsky's opinion was inconsistent with Plaintiff's activities of daily living. Although a claimant's activities may be used to reject a treating physician's opinion, the Ninth Circuit has held that "this principle has no application" where a "holistic review" of the record reveals no inconsistency between a treating physician's opinion and claimant's activities. Ghanim, 763 F.3d at 1162. In Ghanim, claimant performed some basic chores and occasionally socialized, but the record also showed "he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments." Id. In this case, the activities cited by the ALJ were living alone, shopping in stores and attending church (Tr. 28). However, the portions of the record cited by the ALJ (Ex. 5E and hearing testimony) indicate Plaintiff's activities were extremely limited, i.e., he never left the house without his friend, he went to church, the library and grocery shopping with his friend and he could not handle money (Tr. 502-03). He took care of his personal hygiene and grooming, but very slowly because of his pain (Tr. 500). He did not cook or perform household chores (Tr. 501). The evidence cited by the ALJ does not indicate Plaintiff testified he lived alone, but even if he had, the fact that he lived alone would not contradict Dr. Belsky's opinion that Plaintiff could lift less than 10 pounds, and sit, stand and walk for only short periods of time (Tr. 52-101, 499-509). Thus, Plaintiff's limited activities, performed in pain and sometimes with help, do not contradict Dr. Belsky's opinion. Id. (claimant's "limited daily activities are not in tension with the opinions of his treating physicians").

The ALJ found Dr. Belsky's opinion was inconsistent with Plaintiff's conservative care (Tr. 28). However, the record shows Plaintiff was not approved for Medi-Cal until November 2014, which is when he began receiving primary care from Dr. Belsky (Tr. 702). Even then, he did not undergo an MRI of his lumbar spine until November 2016, although Dr. Belsky first recommended a lumbar MRI in August 2015 (Tr. 767, 863). Although MRIs of Plaintiff's left knee were recommended by Dr. Yung and Dr. Warbritton, the record does not indicate any such MRI was ever performed (Tr. 622, 649). Also, there are no reports of MRIs of Plaintiff's shoulders or cervical spine in the record. After Plaintiff's lumbar MRI was performed in November 2016, he was immediately referred to a neurosurgeon (Tr. 867). Thus, the evidence shows Plaintiff's "conservative" care resulted, at least in part, from delays in his care or perhaps from denials of the care requested by his physicians. In any event, an ALJ may not reject a physician's opinion based on conservative care unless the record incites that more aggressive treatment options were "appropriate" and "available." See Lapeirre-Gutt v. Astrue, 382 Fed. App'x 662, 664 (9th Cir. 2010) (ALJ's reliance on claimant's conservative treatment is error "if the record does not reflect that more aggressive treatment options are appropriate or available."); Schultz v. Colvin, 32 F. Supp. 2d 1047, 1060 (N.D. Cal. 2014) ("The Decision [ ] identifies no medical opinions stating what sort of treatment *should* be expected for a totally disabled individual [ ]") (emphasis in the original). That evidence is lacking in this case (footnote omitted).

The ALJ rejected Dr. Belskey's opinion because the testifying orthopaedist disagreed (Tr. 28). This is error because disagreement by a reviewing physician with a medical opinions [sic] that is higher on the opinion hierarchy (examining/treating) is not an adequate reason to reject the higher opinion. See Taylor, 659 F.3d at 1233 (ALJ erroneously rejected consultative examiner's opinion because it was inconsistent with state agency physician opinion); Benecke v. Barnhart, 379 F.3d 587, 592 (9th Cir. 2004) (discussing hierarchy of medical opinion evidence). In any event, disagreement between two medical sources, even if they are treating or examining sources, means only their opinions are controverted, so specific and legitimate, rather than clear and convincing, reasons are required to reject either opinion. See Lester, 81 F.3d at 830 (9th Cir. 1995) (ALJ required to give clear and convincing reasons for rejecting an uncontroverted treating/examining physicians' opinions and specific and legitimate reasons for rejecting a controverted treating/examining physicians' opinions).

Based thereon, the ALJ's reasons for rejecting Dr. Belsky's opinions are not specific or legitimate, as required by the Ninth Circuit.

Dr. Schmitter's opinion. Although Plaintiff does not concede his position that Dr. Schmitter's opinion deserves the least weight of all the medical source opinions of record, the ALJ failed to give any reasons for rejecting the portions of Dr. Schmitter's opinion he did not accept. Even if Dr. Schmitter's opinion constituted significant, probative evidence, the ALJ was obliged to explain why he partially rejected it (footnote omitted). See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ is required to explain why "significant probative evidence has been rejected"). The ALJ purportedly gave "great weight" to Dr. Schmitter's opinion but gave no reasons for not accepting his opinion that Plaintiff could stand/walk only four to six hours per day and was limited to occasional (1/3 of the day or less) stooping, bending, crawling and creeping (Tr. 111). As previously noted, performance of medium work

normally requires the worker to [sic] According to the Commissioner's ruling, in order to perform most medium jobs, an individual must be able to perform frequent (1/3 to 2/3 of the workday) stooping and crouching (footnote omitted). SSR 85-15. Thus, the occasional stooping, bending and standing/walking limitations opined by Dr. Schmitter would prevent Plaintiff from performing the medium work found by the ALJ.

### 3.    Applicable Legal Standards

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the

/ / /

15

opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

/ / /

/ / /

/ / /

16

1

    4.     Disposition

2

    Plaintiff challenges the ALJ's evaluation of the opinions of Drs. Salvador-Moses,

3

Warbritton, Yung, Pon, Belsky, and Schmitter.

4

    i.     Dr. Warbritton

5

    Plaintiff argues: "[T]the ALJ gave no reasons for rejecting Dr. Warbritton's

6

opinion that Plaintiff should push/pull no more than 10 pounds, could not walk on uneven ground

7

nor do more than repetitive bending or squatting (50% or less per day) (Tr. 22-23, 649)."

8

Plaintiff's argument is unpersuasive because it misstates the doctor's report. Specifically, the

9

court has reviewed Dr. Warbritton's report, particular at CAR 649, and finds no reference to any

10

functional opinions.

11

    ii.     Dr. Yung

12

    According to plaintiff, the ALJ erred by misstating the doctor's opinion as

13

expressing temporary restrictions because, in fact, "Dr. Yung's assessment turned out to be

14

permanent" based on later assessments provided by Dr. Yung as well as Drs. Pon, and

15

Warbritton. This argument is unpersuasive because it is logically flawed. The doctor's earlier

16

opinion that plaintiff's limitations were temporary at that time is not rendered inaccurate because

17

the same or other doctors later made the same findings. Plaintiff's argument presumes the benefit

18

of hindsight.

19

    iii.     Dr. Pon

20

    Plaintiff argues the ALJ erred in citing use of a cane as a reason to reject Dr. Pon's

21

opinions.[5] This argument is unpersuasive because it misstates the ALJ's evaluation. The ALJ did

22

not reject Dr. Pon's opinions because they were based on plaintiff's need to use a cane, or lack

23

thereof. Rather, the ALJ noted Dr. Pon was unable to evaluate plaintiff's gait pattern because

24

plaintiff refused to ambulate without his cane. See CAR 27 (citing Exhibit 7F). The ALJ

25

concluded: "The fact that Dr. Pon was unable to fully consider the claimant's objective

26

/ / /

27

28

      [5]     Plaintiff also appears to challenge the ALJ's finding Dr. Pon's opinions are
inconsistent with plaintiff's daily activities as well as a history of conservative treatment, but
plaintiff offers no specific analysis in this regard.

1    capabilities casts doubt on his limitations." Id.  This uncontroverted fact supports the ALJ's

2    analysis.

3                              iv.    Dr. Schmitter

4           According to plaintiff, the ALJ erred because: "The ALJ purportedly gave "great

5    weight" to Dr. Schmitter's opinion but gave no reasons for not accepting his opinion that Plaintiff

6    could stand/walk only four to six hours per day and was limited to occasional (1/3 of the day or

7    less) stooping, bending, crawling and creeping (Tr. 111)."  The court finds no error.  Dr.

8    Schmitter testified plaintiff can perform medium work "at least."  CAR 111.  In this context, the

9    doctor opined plaintiff can stand/walk four to six hours a day.  See id.  Dr. Schmitter also testified

10   plaintiff had limitations with respect to stooping, bending, crawling, and creeping.  See id.  The

11   doctor stated the frequency with which plaintiff can perform these tasks is "perhaps even frequent

12   but occasional would be generous."  Id.  Contrary to plaintiff's argument, the ALJ accounted for

13   these limitations in her residual functional capacity finding.  See id. at 21.

14                             v.    Dr. Salvador-Moses

15          The ALJ rejected opinions expressed by Dr. Salvador-Moses as based largely on

16   plaintiff's inconsistent subjective complaints.  See CAR 26-27.  The ALJ also stated the doctor's

17   opinions are "inconsistent with the lack of mental health care during the period at issue."  Id. at

18   27.  Lastly, the ALJ discounted Dr. Salvador-Moses' opinions because the doctor ". . .was unable

19   to consider evidence the claimant did not provide maximum effort during numerous examinations

20   (related to claims for secondary gain)."  Id.

21          Regarding reliance on plaintiff's subjective complaints, plaintiff contends: "This

22   reason must fail because there is no indication in Dr. Salvador-Moses' report that she relied on

23   Plaintiff's subjective complaints more heavily than on her clinical observations (Tr. 669-71)."  In

24   support of this contention, plaintiff asserts the ALJ failed to account for Dr. Salvador-Moses'

25   objective findings showing "significant deficits" on mental status examination.  As to lack of

26   psychiatric care, plaintiff argues this reason is invalid pursuant to Nguyen v. Chater, 100 F.3d

27   1462, 1465 (9th Cir. 1996) (questioning the practice of chastising one with a mental disorder for

28   the exercise of poor judgment in seeking mental health care).  Finally, citing Garrison v. Colvin,

                                          18

759 F.3d 995, 1018 (9th Cir. 2014), plaintiff argues the ALJ may not rely on evidence his

psychiatric condition improved with medication.

Plaintiff does <u>not</u> address the last reason offered by the ALJ for discounting Dr.

Salvador-Moses' opinions – that the doctor was unable to consider evidence of malingering.  The

ALJ stated:

> . . . Lastly, in tendering her assessment, Dr. Salvador-Moses was unable to consider evidence the claimant did not provide maximum effort during numerous examinations (related to claims for secondary gain).  Such evidence could have led Dr. Salvador-Moses more closely scrutinizing the claimant's subjective accounts of limitations.

CAR 27.

This court agrees and finds evidence of malingering, had Dr. Salvador-Moses considered it, could

have impacted the doctor's assessment.

The court also finds the ALJ did not err with respect to the doctor's reliance on

plaintiff's subjective complaints.  The ALJ stated:

> . . .First, Dr. Salvador-Moses appears to base her opinion largely on the claimant's subjective complaints, which have been inconsistent during the period at issue (as detailed in full above).  For example, the claimant indicated to Dr. Salvador-Moses that his social functioning was "severely limited."  He indicated he avoids others and does not want to interact with people (Ex. 6F, page 2).  In apparent reliance on these statements, Dr. Salvador-Moses found the claimant has severe impairments in the ability to interact with supervisors, co-workers and public.  However, other evidence of record shows the claimant has regular interactions with family and friends.  In fact, the claimant outright admits he has never had difficulty with interacting with others during employment, and stated he chose to live with this close friend (Ex. 5E).  The fact that Dr. Salvador-Moses appears to rely so heavily on the claimant's subjective complaints, when evidence exists to contradict these allegations casts doubt on the medical opinion. . . .

CAR 26-27.

According to plaintiff, the ALJ erred because "there is no indication in Dr. Salvador-Moses's

report that she relied on Plaintiff's subjective complaints more heavily than on her clinical

observations. . . ."  Plaintiff's argument is unpersuasive because it presumes the doctor would

include an explicit statement to this effect in her report, which of course she would not.

Moreover, even though the evidence cited by the ALJ may not show the degree to which Dr.

Salvador-Moses relied on plaintiff's subjective complaints, it nonetheless indicates reliance on

subjective complaints despite plaintiff's contrary allegations.[6]  Plaintiff's argument the ALJ

failed to account for Dr. Salvador-Moses' objective clinical findings is also unpersuasive because,

as detailed above, the ALJ specifically noted the doctor's examination findings in the hearing

decision.  See Id. at 26.

Finally, the court also finds no error as to the ALJ's references to lack of

psychiatric care or improvement with medication.  The ALJ stated:

> . . .Secondly, the doctor's medical opinion is inconsistent with the lack of
> mental health care during the period at issue.  It is (again) emphasized that
> the claimant never sought or received specialized health care in the 4 years
> since the alleged onset date.  It is true the claimant recently began
> psychotropic medication (as prescribed by his treating physician);
> however, this treatment is undercut by the fact that he showed immediate
> improvement in the months following his medication (Ex. 14F, page 18).

CAR 27.

To the extent plaintiff is correct that the ALJ erred by relying exclusively on either lack of

psychiatric care under Nguyen or evidence of improvement with medication under Garrison, the

ALJ in this case did not rely exclusively on either reason.  Rather, those reasons were considered

in combination with the other reasons discussed above.

                                vi.    Dr. Belsky

Plaintiff argues the ALJ erred in characterizing limitations opined by Dr. Belsky in

February 2015 as "temporary" because they were confirmed in later assessments by Dr. Belsky,

as well as Drs. Pon and Yung.  As with plaintiff's argument regarding the ALJ's analysis of Dr.

Yung's opinions, this argument is unpersuasive because it presumes the benefit of hindsight.

As to the ALJ's evaluation of Dr. Belsky's January 2017 opinions, plaintiff

contends none of the three reasons articulated by the ALJ is supported by the record.

Specifically, plaintiff asserts the daily activities cited by the ALJ are extremely limited and, as

such, do not contradict Dr. Belsky's opinion.  Next, plaintiff argues the ALJ erred in relying on a

history of conservative care.  Finally, plaintiff argues the ALJ erred by citing disagreement with

the testifying medical expert.

---

[6]        As with Dr. Belsky, Dr. Salvador-Moses opined as to restrictions in interactions
greater than those alleged by plaintiff.

The court finds no error with respect to the ALJ's reference to plaintiff's daily activities. The ALJ stated:

> . . .First, they are extreme and extend beyond the claimant's own representation of abilities. For example, the claimant testified he is able to sit for 30 minutes at one time, whereas Dr. Belsky reported a limit of 2-5 minutes (Hearing Testimony, 5/4/2016). The claimant indicated he is also capable of activities of daily living, including living alone, shopping in stores, and attending church (Ex. 5E and Hearing Testimony, 5/4/2016). One questions how the claimant would be capable of such activities if he was as limited as determined by the doctor. The fact that Dr. Belsky's limitations are more extreme than the claimant's own accounts casts doubt on their veracity. . . .

CAR 28.

Plaintiff's argument conflates the credibility analysis with evaluation of medical opinions. Plaintiff's argument incorrectly presumes the ALJ determined the objective evidence is inconsistent with plaintiff's alleged limitations, as would be the case in a credibility analysis. To the contrary, the ALJ in this case determined the doctor's opinion is inconsistent with plaintiff's alleged limitations. In essence, the ALJ gave plaintiff the benefit of the doubt with respect to daily activities when evaluating Dr. Belsky's opinion, assuming plaintiff is in fact as limited as he claims.

Plaintiff's argument, that the ALJ may not cite evidence of conservative treatment unless the record indicates more aggressive treatment options were appropriate and available, is unpersuasive. Citing Schultz v. Colvin, 32 F. Supp. 2d 1047, 1060 (N.D. Cal. 2014), plaintiff contends the ALJ erred because the record in this case does not indicate what mental health treatment options were considered appropriate and available. To the contrary, and as plaintiff acknowledges in his brief, the record reflects plaintiff's treating physicians believed psychotropic medication was warranted and, as the ALJ noted, plaintiff's condition improved upon such treatment. Plaintiff does not point to any portion of the record suggesting more aggressive treatment was recommended.

/ / /

/ / /

/ / /

21

Finally, the court finds no error as to the ALJ's reference to the medical expert's testimony. Here, the ALJ relied in part on Dr. Schmitter's hearing testimony in which the doctor opined Dr. Belsky's opinion is exaggerated. While plaintiff is correct the ALJ may not rely solely on a non-examining source, such as Dr. Schmitter, to discount the opinions of a treating source, such as Dr. Belsky, see Lester, 81 F.3d at 830-31, the ALJ did not err in this case because she did not rely exclusively on Dr. Schmitter's testimony. As discussed above, the ALJ relied on a number of other factors in deciding to give Dr. Belsky's opinions little weight.

**B.** **Credibility**

1. The ALJ's Analysis

At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony to determine his residual functional capacity. See CAR 21-26. The ALJ began by summarizing plaintiff's allegations:

> The claimant has alleged disability by way of debilitating symptoms resulting from myofascial pain syndrome, cervical and lumbar strain(s), bilateral shoulder strain(s) and degenerative joint disease of the left knee. At the hearing, the claimant testified to symptoms of chronic pain, particularly in the back, neck and bilateral shoulders. The claimant indicated he is severely restricted due to pain. The claimant reported he is unable to engage in prolonged sitting, standing or walking. The claimant advised he is able to sit for 30 minutes, stand for 15 minutes and walk for 10 minutes before he must rest. The claimant represented he uses a cane for ambulation. The claimant explained he always uses his cane while walking outside, and intermittently uses it when walking inside the house. The claimant alleged he has difficulty with use of his upper extremities. The claimant stated he is able to reach for 15 minutes before he must rest his arm(s). The claimant indicated he is unable to lift heavy weight. The claimant represented he has problems with squatting, bending, kneeling, hearing, seeing, and stair climbing. In addition to his physical impairments, the claimant endorsed recurrent symptoms of depression and anxiety. The claimant stated he has deficits in memory, completing tasks concentration, understanding, following instructions and getting along with others. The claimant advised [he] is unable to focus more than 5-10 minutes at one time. The claimant reported he deals poorly with stress or change. The claimant indicated he is nervous in public, and unable to leave his house alone. The claimant represented he has poor sleep and related symptoms of fatigue. The claimant advised he is restricted in activities of daily living. He stated he requires assistance and reminders to complete tasks. The claimant testified he is unable to sustain work function on a regular and consistent basis (Ex. 2E, 5E, 6E and Hearing Testimony, 5/10/2016 and 2/1/2017).

> Id. at 21-22.

After outlining a detailed summary of the longitudinal medical record, including plaintiff's subjective reports to medical providers, the ALJ assessed the credibility of plaintiff's statements and testimony:

> Based on the review of the evidence above, the undersigned finds that the claimant's account of the severity of symptoms, as well as his allegations regarding functional limitations, are not fully credible for the following reasons:
>
> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), the claimant has reported the following daily activities: perform personal care tasks, goes to fast-food restaurants to get food on a regular basis, completes light household chores, drives a car, shops in stores, attends church, watches television, and visits with family and friends (Ex. 5E. 6E, 6F and 7F). Such activities show the claimant is capable of the above residual functional capacity. It is noted that there is evidence the claimant lived alone for, at least part of, the period at issue (Ex. 4F, page 3). This evidence further casts doubt on the nature and extent of the claimant's impairments.
>
> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. During the period at issue, the record shows sporadic and conservative care for the claimant's allegedly disabling physical impairments. For example, the record shows no medical care whatsoever from October 2013 through July 2014, a period of approximately 9 months (Ex. 5F and 6F). The fact that the claimant has been capable of managing his symptoms for prolonged periods without medical care suggests he is not as limited as alleged. Furthermore, the claimant never received specialized care or surgical intervention. If the claimant were truly disabled by ongoing symptoms of pain, one would expect far more aggressive medical care. As to his mental impairments, the undersigned emphasizes there is no specialized mental health care whatsoever during the period at issue. Moreover, treating physicians noted significant improvement or resolution of symptoms with only psychotropic medication (Ex. 14F, page 18). This evidence casts doubts on allegations of disabling mental limitations.
>
> The record shows the claimant's symptoms of chronic pain stem from an incident that took place years before the alleged onset date. Here, the undersigned emphasizes the questionable nature of the claimant's timeline (as related to his severe impairments). The claimant's alleged chronic pain stems from a work-related injury in February 2008. The claimant underwent conservative care, and was released from care in March 2008. Treating physicians noted the claimant was "in no pain" and "100%." At that point, the claimant was released to work without modification. The claimant concedes he required no medical care from 2008 through 2012, admitting improvement in his condition. The claimant was capable of performing work activity during said period. The claimant stated that he had (an apparently spontaneous) deterioration of his condition in

23

November 2012, at which time he alleges disability (Ex. 2E and 4F, page 3). The undersigned finds this timeline suspect. First, the fact that the work-related impairments did not prevent the claimant from working from 2008-2012 strongly suggests that they would not currently prevent work. Second, the claimant fails to identify any particular incident that led to a worsening in his condition in or around November 2012.

The description of symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive. At the hearing, the claimant testified to symptoms of constant pain. The claimant indicated he takes medication; however, he continues to have severe symptoms. The claimant alleged he is extremely restricted due to pain. He stated that he lies down for prolonged periods of the day. He advised that he is able to walk only 10 minutes before he must rest (Hearing Testimony). The fact that the claimant described much more severe symptoms at his hearing than to his treating physicians casts doubt on his testimony.

CAR 24-25.

The ALJ then commented specifically on the need to use a cane:

. . .The claimant reported to the Appeals Council that he uses a cane when he feels he will fall without it (Ex. 8A). Additional records discuss the claimant's use of a cane (Ex. 7F). However, the medical expert indicated the claimant would be capable of modified medium work without use of a cane (Hearing Testimony, 2/1/2017). Furthermore, the claimant's treating physician[] failed to report this limitation in his medial opinion, despite setting forth extreme limitations (Ex. 23F). Lastly, accounts of daily activities and abilities suggest the claimant is capable of walking without use of his cane (Ex. 5F, 6F, 7F, and Hearing Testimony, 5/4/2016). As such, the undersigned gives little weight to this allegation.

There is evidence that the claimant was less than fully cooperative or put forth less than maximal effort during examinations. In September 2013, examining physician Dr. Warbritton indicated the claimant did <u>not</u> show full effort during examination (Ex. 4F). Then, in December 2013, the claimant refused to attempt ambulation without a cane within the confines of the doctor's office. Dr. Pon stated he was unable to evaluate the claimant's gait pattern due to the claimant's refusal to walk without his cane (Ex. 7F, page 4). Curiously, the claimant admitted to treating physicians he is capable of walking indoors without his cane (Ex. 13F, pages 38-40). The fact that the claimant would not even attempt to walk indoors upon examination (when he does so regularly) suggests that he, once again, was not putting forth maximum effort.

CAR 25-26.

/ / /

/ / /

/ / /

/ / /

24

2.     Plaintiff's Contentions

Plaintiff argues:

When rejecting Plaintiff's testimony, the ALJ gave reasons that are substantially similar to his inadequate reasons for rejecting Dr. Belsky's opinion, i.e., Plaintiff's supposedly conflicting daily activities and his "sporadic and conservative" medical care (Tr. 24).

When rejecting a claimant's testimony based on claimant's activities, an ALJ is required to elaborate on which of claimant's activities conflicted with what part of her testimony. See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (ALJ failed to elaborate on which daily activities conflicted with which part of her testimony). The activities cited by the ALJ that are purportedly inconsistent with his testimony are Plaintiff's performance of "personal care tasks, goes to fastfood restaurant to get food on a regular basis, completes light household chores, drives a car, shops in stores, attends church, watches television and visits with family and friends," citing his written statement and his statements to Drs. Pon and Salvador-Moses (Tr. 24). The generality of this finding by itself renders the ALJ's finding inadequate. Id.

Further, the ALJ's recitation of Plaintiff's activities is not entirely accurate. Although Plaintiff performed his personal care tasks, he performed these tasks slowly and with difficulty because of pain (Tr. 500, 670); he ate in fast-food restaurants because he was unable to cook because of his pain (Tr. 501), and he attended church and shopped for groceries, but he never went out of the house without his friend because of his nervousness (Tr. 502). Plaintiff did not indicate he performed light household chores, but told Dr. Salvador-Moses that he needed help with cleaning, laundry and cooking and told Dr. Pon he did not wash the dishes or take out the garbage or vacuum or sweep/mop the floor or do laundry (Tr. 670, 674). In the evidence cited by the ALJ, Plaintiff did not identify any household chores he actually performed (Tr. 501-02, 670, 674). Contrary to the ALJ's finding, Plaintiff did not state he "visited with family and friends," but told Dr. Salvador-Moses his mother and brother came over to help him and his friend (singular) also helped him (Tr. 670). The ALJ failed to mention that Plaintiff also told Dr. Salvador-Moses he stayed home most of the time and did not go out of the house unaccompanied because he had frequent panic attacks and had a hard time being around people (Tr. 670). Statement is consistent with Plaintiff's written statement wherein he reported he never went out alone and never left the house without his friend (Tr. 502-03). Thus, the ALJ misrepresented evidence of Plaintiff's daily activities.

In any event, the limited activities cited by the ALJ, such as watching television and grocery shopping, do not show Plaintiff could sustain substantial gainful activity on a regular and continuing basis, i.e., eight hours a day, 40 hours a week (Tr. 34). See Reddick, 157 F.3d at 772 ("Many home activities are not easily transferrable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Indeed, Plaintiff testified that, other than a few sporadic activities, he spent most of his day sitting or lying down (Tr. 119). Thus, the activities cited by the ALJ are not inconsistent with Plaintiff's testimony. See Reddick, 157 F.3d at 772 (claimant's activities, which were sporadic and punctuated with rest, supported her claim).

As with the ALJ's rejection of Dr. Belsky's opinion, the ALJ rejected Plaintiff's testimony because of conservative medical care (Tr. 24). The reasons for the inadequacy of this finding are discussed above. Plaintiff adds that a "conservative course of treatment" cannot be used against a claimant "where the claimant has a good reason for not seeking more aggressive treatment," [such as lack of insurance]. Carmickle v. Astrue, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007)). Lack of insurance and inability to pay is one such reason. Id. In this case, Plaintiff did not have Medi-Cal until November 2014 and it was not until November 2016 that Plaintiff was referred to a neurosurgeon based on the abnormalities his recent lumbar MRI had shown (Tr. 702, 863). The ALJ also rejected Plaintiff testimony because he was able to "manag[e] his symptoms for prolonged periods of time without medical care," i.e., when he did not have medical coverage (Tr. 24). The ALJ cites no evidence that Plaintiff adequately managed his symptoms without medical care. On the contrary, Plaintiff's pain was debilitating and prevented him from adequately performing the most basic activities (Tr. 500-03).

The ALJ also discredited Plaintiff's testimony as to his mental deficits, based on no psychiatric care and "significant improvement or resolution of symptoms with only psychotropic medication," citing the same single treatment note that was used to reject Dr. Salvador-Moses' opinion (Tr. 25). The Ninth Circuit has disapproved lack of psychiatric treatment as a reason for discrediting a claimant's testimony: "Indeed, we have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Regennitter v. Comm'r of SSA, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). Therefore, this reason should fail judicial review.

3.   Applicable Legal Standards

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

26

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v.

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

### 4.    Disposition

The ALJ found plaintiff's statements and testimony not fully credible because they are inconsistent with his activities of daily living.  See CAR 24.  In making her credibility findings, the ALJ also cited plaintiff's sporadic and conservative treatment, the questionable timeline regarding the onset of disability, and evidence of malingering in the context of plaintiff's use of a cane.  See id. at 24-25.  Plaintiff argues the ALJ erred by relying on his daily activities because the ALJ failed to cite daily activities which translate to regular and consistent work.  In this regard, plaintiff also argues the ALJ misstated the extent of his daily activities.  According to plaintiff, the ALJ further erred by citing plaintiff's treatment history.  Notably, plaintiff does not raise any arguments as to the ALJ's references to the timeline or evidence of malingering, noted in the context of plaintiff's use of a cane.

/ / /

/ / /

/ / /

Plaintiff's argument regarding the ALJ's reliance on activities of daily living is well-taken. As to plaintiff's daily activities, the ALJ found plaintiff's ability to complete light household chores, go to fast-food restaurants on a regular basis, attend church, watch television, drive a car, shop in stores, and visit with family and friends "show the claimant is capable of the above residual functional capacity [for a reduced range of medium work]." CAR 24. As plaintiff notes, plaintiff has described these activities to be very limited and has stated they could only be performed with assistance. See e.g. CAR 500-503 (Exhibit 5E). The court agrees these activities as performed by plaintiff do not translate to the ability to engage in a reduced range of medium work on a full-time basis. See Fair, 885 F.2d at 603.

In the context of the ALJ's credibility assessment, plaintiff's arguments regarding the ALJ's reliance on aspects of his treatment record (i.e., sporadic conservative care with improvement in symptoms) are also well-taken. The court accepts plaintiff's representations that he was unable to afford health care at times and agrees it is questionable to hold poor decisions with respect to obtaining care against a claimant alleging mental impairments. The court also questions the ALJ's repeated reliance on a single treatment note suggesting plaintiff's mental symptoms improved with medication to conclude plaintiff's condition was either well-controlled or improved overall.

Reviewing the record as a whole, however, the court cannot say the ALJ's adverse credibility finding lacks support in substantial evidence or is not based on proper legal principles. As discussed above and as the ALJ noted, the record contains evidence of malingering. The court also agrees with the ALJ the timeline is suspect. In this regard, the ALJ stated:

> The record shows the claimant's symptoms of chronic pain stem from an incident that took place years before the alleged onset date. Here, the undersigned emphasizes the questionable nature of the claimant's timeline (as related to his severe impairments). The claimant's alleged chronic pain stems from a work-related injury in February 2008. The claimant underwent conservative care, and was released from care in March 2008. Treating physicians noted the claimant was "in no pain" and "100%." At that point, the claimant was released to work without modification. The claimant concedes he required no medical care from 2008 through 2012, admitting improvement in his condition. The claimant was capable of performing work activity during said period. The claimant stated that he had (an apparently spontaneous) deterioration of his condition in November 2012, at which time he alleges disability (Ex. 2E and 4F, page

29

3). The undersigned finds this timeline suspect. First, the fact that the work-related impairments did not prevent the claimant from working from 2008-2012 strongly suggests that they would not currently prevent work. Second, the claimant fails to identify any particular incident that led to a worsening in his condition in or around November 2012.

CAR 25.

Plaintiff does not challenge these findings, which support the ALJ's credibility analysis.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (Doc. 16) is denied;

2.  Defendant's motion for summary judgment (Doc. 25) is granted;

3.  The Commissioner's final decision is affirmed; and

4.  The Clerk of the Court is directed to enter judgment and close this file.

Dated:  January 9, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE